UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LeCHASE CONSTR. SERVS., LLC,

                Plaintiff,

v.

ESCOBAR CONSTRUCTION, INC.,

                Defendant,

ESCOBAR CONSTRUCTION, INC.,           3:18-CV-1021
                                                      (GTS/DEP)

                Counter-Claimant,

LeCHASE CONSTR. SERVS., LLC;
and LIBERTY MUT. INS. CO.,

                Counter-Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

ERNSTROM & DRESTE, LLP               JOHN W. DRESTE, ESQ.
   Counsel for Plaintiff/Counter-Defendants    MATTHEW D. HOLMES, ESQ.
925 Clinton Square
Rochester, New York 14604

REEVE BROWN PLLC                     CHARLES A. REEVE, ESQ.
   Counsel for Defendant/Counter-Claimant
3380 Monroe Avenue, Suite 200
Rochester, New York 14618

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this breach-of-contract action filed by LeChase Construction Services, LLC ("Plaintiff") against Escobar Construction, Inc. ("Counter-Claimant"), is Plaintiff and Liberty Mutual Insurance Company's (collectively "Counter-

Defendants") motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or, in the alternative, motion to dismiss Counter-Claimant's counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 13, Attach. 5.) For the reasons set forth below, Counter-Defendants' motion is granted pursuant to Fed. R. Civ. P. 12(c).[1]

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges as follows. (*See generally* Dkt. No. 1 [Pl.'s Compl.].)

Plaintiff is a construction contractor and was retained by EdR Maplewood LLC to construct approximately 500,000 square feet of apartments and townhouses for incoming graduate and professional students at Cornell University in Ithaca, New York (the "Project"). (*Id.*) Plaintiff and Counter-Claimant entered into a subcontract dated May 26, 2017 (the "Subcontract"), pursuant to which Counter-Claimant would complete, *inter alia*, drywall and associated work for the Project. (*Id.*) The Subcontract specified that time was of the essence and that Counter-Claimant would complete its work in a timely fashion so that students returning for the 2018-2019 academic year could live in the completed Project. (*Id.*)

Counter-Claimant's work was repeatedly rejected by municipal inspectors as being defective, deficient, or otherwise not in accordance with codes. (*Id.*) In addition, while Counter-

---

[1] The Court grants Counter-Defendants' motion pursuant to Fed. R. Civ. P. 12(c) and not Fed. R. Civ. P. 12(b)(6) because, as identified by Counter-Claimant and not disputed by Counter-Defendants, a motion pursuant to Fed. R. Civ. P. 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Counter-Defendants filed this motion after answering Counter-Claimant's counterclaims. (*Compare* Dkt. No. 10, *with* Dkt. No. 13.)

Claimant worked on the Project, Plaintiff learned that Counter-Claimant's performance was not progressing at an appropriate speed. (*Id.*) Plaintiff timely notified Counter-Claimant of its defaults, failure to progress the Subcontract work diligently and properly, and failure to timely perform other requirements under the Subcontract. (*Id.*) Plaintiff also informed Counter-Claimant that, without prejudice to any other remedy, Plaintiff intended to make up for Counter-Claimant's deficiencies, including supplementing the workforce to promptly progress the work so that students could occupy the Project before the 2018-2019 academic year. (*Id.*)

On August 14, 2018, six days before a designated completion date of August 20, 2018, Counter-Claimant abandoned the Project worksite without notice. (*Id.*) After abandoning the worksite, Counter-Claimant notified Plaintiff that it would not return unless Plaintiff agreed to pay additional sums not due pursuant to the Subcontract. (*Id.*) Plaintiff refused Counter-Claimant's extra-contractual demands and immediately arranged for further work supplementation to perform Counter-Claimant's incomplete work. (*Id.*)

On August 15, 2018, without notice to Plaintiff, Counter-Claimant re-appeared on the Project worksite. (*Id.*) Pursuant to the Subcontract, Plaintiff demanded assurances from Counter-Claimant of its intent and ability to duly and timely complete its obligations under the Subcontract. (*Id.*) Counter-Claimant refused and failed to provide any assurances to Plaintiff of its intent or ability to complete performance under the Subcontract. (*Id.*)

On August 19, 2018, Counter-Claimant abandoned the Project worksite a second time. (*Id.*) Plaintiff arranged for others to complete the work abandoned by Counter-Claimant. (*Id.*)

Based upon the foregoing allegations, the Complaint asserts the following two claims: (1) a claim that Counter-Claimant breached the Subcontract pursuant to New York common law;

and (2) a claim for attorneys' fees pursuant to paragraph 37 of the Subcontract. (*Id.*) Familiarity with the remaining factual allegations supporting these claims and the relief requested in the Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.

> B. **Counter-Claimant's Counterclaims**

Generally, liberally construed, Counter-Claimant's counterclaims allege as follows. (*See generally* Dkt. No. 5 [Def.'s Answer and Contercl.].)

On or about March 1, 2017, Plaintiff entered a contract (the "Contract") with non-party EDR Maplewood LLC for the construction of Maplewood Housing at Cornell University in Ithaca, New York (the "Project"). (*Id.*) On or about March 28, 2017, Plaintiff, as principal, and Liberty Mutual Insurance Company, as surety, issued payment bond number 837069158 ("Payment Bond") in connection with the Contract. (*Id.*)

On or about May 26, 2017, Counter-Claimant entered into the Subcontract with Plaintiff pursuant to which Counter-Claimant agreed to perform certain drywall and associated work with regard to the Project. (*Id.*) Pursuant to a schedule of April 24, 2017, Counter-Claimant was to begin its work in November 2017, and complete its work in July 2018. (*Id.*) However, because of delays to the Project, over which Counter-Claimant had no control, on or about January 24, 2018, Plaintiff and EDR Maplewood LLC moved the completion date for the Project from July 31, 2018, to August 20, 2018. (*Id.*)

Despite moving the completion date to August 20, 2018, the time period for Counter-Claimant to perform its work was dramatically shortened. (*Id.*) As a result of the shortening time periods, Plaintiff was unable to manage the Project in an orderly manner. (*Id.*) Plaintiff's

4

improper management of the Project prevented Counter-Claimant from completing its work in the orderly and efficient manner originally contemplated, and substantially increased the costs incurred by Counter-Claimant. (*Id.*) For example, Counter-Claimant incurred additional costs in that (a) it was required to have additional crews of subcontractors and laborers working on the Project at the same time, which required additional supervision, (b) it was unable to secure materials from the suppliers with whom it had originally contracted at favorable prices, (c) it was required to provide laborers to off-load and move materials within the project, and (d) it was required to pay for the housing of laborers working on the Subcontract. (*Id.*) In addition, on numerous occasions, Counter-Claimant was ordered by Plaintiff to perform partial work in buildings, move to other buildings to perform work, and return to the partially completed buildings, which ruined the efficiency and productivity that the parties had planned on when they entered into the Subcontract. (*Id.*) Moreover, Counter-Claimant was ordered to perform its work before other trades would have ordinarily performed their work, resulting in damage to Counter-Claimant's work that then had to be repaired. (*Id.*) As a result, Counter-Claimant incurred additional costs in the amount of $1,528,701. (*Id.*)

Counter-Claimant repeatedly requested compensation from Plaintiff for these additional costs. (*Id.*) However, Plaintiff refused to address Counter-Claimant's requests. (*Id.*) As a result of Plaintiff's failure to compensate Counter-Claimant for performing additional work, Counter-Claimant was forced to leave the Project worksite on August 15, 2018. (*Id.*)

After Counter-Claimant left the Project worksite on August 15, 2018, Plaintiff stopped payment on a check in the amount of $1,176,110.41 related to work Counter-Claimant

satisfactorily performed during July 2018. (*Id.*)[2]

On August 16, 2018, Counter-Claimant returned to the Project worksite and attempted, unsuccessfully, to come to a financial agreement with Plaintiff that would enable Counter-Claimant to complete its work pursuant to the Subcontract. (*Id*.)

At Plaintiff's request, Counter-Claimant agreed to work through the nights of August 23, 2018, and August 24, 2018, to repaint buildings that had been poorly painted by another contractor hired by Plaintiff. (*Id.*)

On August 25, 2018, Counter-Claimant was again forced to leave the Project worksite due to non-payment by Plaintiff for the additional work performed by Counter-Claimant. (*Id.*) During the month of August 2018, Counter-Claimant performed work valued at $435,994.80. (*Id.*) When Counter-Claimant left the Project worksite, Plaintiff was holding retainage through Counter-Claimant's application for payment number 10, in the amount of $563,535.75. (*Id.*)

Based upon the foregoing allegations, Counter-Claimant asserts the following four counterclaims: (1) a claim against Plaintiff for breach of the Subcontract pursuant to New York common law; (2) in the alternative, a claim against Plaintiff for *quantum meruit* pursuant to New York common law doctrine; (3) in the alternative, a claim against Plaintiff for unjust enrichment pursuant to New York common law; and (4) a claim against the Counter-Defendants for breach of a payment bond jointly and severally. (*Id.*) Familiarity with the remaining factual allegations supporting these counterclaims and the relief requested is assumed in this Decision and Order, which is intended primarily for the review of the parties.

---

[2] This check related to Counter-Claimant's application for payment number 10. (*Id.*)

### C. Counter-Defendants' Motion to Dismiss the Counterclaims

#### 1. Counter-Defendants' Memorandum of Law-in-Chief

Generally, in support of their motion for judgment on the pleadings, or in the alternative to dismiss for failure to state a claim, Counter-Defendants assert the following five arguments: (1) the counterclaims are barred as a matter of law because Counter-Claimant admitted that it materially breached the Subcontract when it abandoned the Project worksite two times despite Article 33 of the Subcontract ("Paragraph 33"), which provided that Counter-Claimant continue working during a dispute; (2) Counter-Claimant has not alleged, nor can it allege, that, before it asserted the counterclaims, it complied with the conditions precedent pursuant to Article 32 of the Subcontract ("Paragraph 32") regarding disputes or changes to the Subcontract; (3) the unjust enrichment and *quantum meriut* claims ("quasi-contract claims") are barred as a matter of law by the existence of the valid Subcontract; (4) because the counterclaims must be dismissed against Plaintiff, they must also be dismissed against Liberty Mutual Insurance, which is entitled to assert all defenses, offsets, recoupments, and counterclaims as is Plaintiff; and (5) because Counter-Claimant has no right to recover from Plaintiff pursuant to the Subcontract, it also has no right to recover from Liberty Mutual Insurance as surety on the Project. (*See generally* Dkt. No. 13, Attach. 5 [Counter-Defs.' Mem. of Law].)

#### 2. Counter-Claimant's Opposition Memorandum of Law

Generally, in Counter-Claimant's opposition to Counter-Defendants' motion, Counter-Claimant asserts the following six arguments: (1) Counter-Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be denied pursuant to Fed. R. Civ. P. 12(b) because the Counter-Defendants filed an Answer to the counterclaims before filing this motion; (2) it

alleged facts plausibly suggesting a claim for breach of contract; (3) Counter-Claimant is not required to plead compliance with the conditions precedent in the Subcontract because (a) there is a split in the Second Circuit regarding whether pleading performance of a condition precedent is required, (b) Counter-Defendants did not allege with particularity Counter-Claimant's non-compliance with the conditions precedent, and (c) there is an issue of fact whether Plaintiff waived the notice provisions contained in Paragraph 32; (4) the counterclaims are not barred by an admission of a material breach because (a) whether Counter-Claimant's leaving the Project worksite was justified or an abandonment is an issue of fact, (b) to the extent that Paragraph 33 of the Subcontract mandates Counter-Claimant to continue working pending payment disputes, it is void pursuant to N.Y. Gen. Bus. Law § 757, and (c) even if Paragraph 33 was enforceable, Counter-Claimant asserted that the disputed work was not contemplated by the Subcontract and thus would not be covered by the Subcontract; (5) Counter-Claimant's quasi-contract claims are not barred as a matter of law because Counter-Claimant has alleged that certain additional work was extracontractual and thus not covered by the Subcontract; and (6) Counter-Claimant should be granted leave to re-plead any claims deemed insufficiently pleaded. (*See generally* Dkt. No. 16 [Counter-Claimant's Opp'n Mem. of Law].)

### 3. Counter-Defendants' Reply Memorandum of Law

Generally in their reply, Counter-Defendants assert the following five arguments: (1) Counter-Claimant's arguments regarding compliance with the Subcontract's condition precedent fail because (a) Counter-Claimant is required to plead, in some form though not with specificity, compliance with the Subcontract's conditions precedent contained in Paragraph 33, (b) the counterclaims are devoid of any actual allegation that Plaintiff waived compliance with the

8

Subcontract's conditions precedent, (c) Counter-Defendants' Fifth Affirmative Defense clearly states that Counter-Claimant's counterclaims are barred "by its failure to plead and satisfy compliance with the contractual conditions precedent including, but not limited to, those found in Article 32 of the Subcontract," and (d) without providing any support for the proposition that Plaintiff waived the notice provision in Paragraph 32, Counter-Claimant then argues that, if Plaintiff disputes any waiver, there must be an issue of fact; (2) there is no factual dispute that Counter-Claimant abandoned the Project worksite two times during a dispute, while Plaintiff was current on payment and Paragraph 33 expressly covers "any changed or disputed work"; (3) Paragraph 33 is not void pursuant to N.Y. Gen. Bus. Law § 757 because Counter-Claimant is not seeking payment for unjustly delayed payment for approved services but instead is seeking payment for "extra" work; (4) Counter-Claimant's quasi-contract claims are barred by its admission to the existence of the Subcontract because Pargraphs 32 and 33 expressly address extra work, claims procedures, and additional compensation; and (5) Counter-Claimant's request for leave to re-plead must be denied because (a) its failure to attach an unsigned copy of the proposed pleading to its motion papers is in violation of Local Rules 7.1(a)(4) and 15.1, and (b) the amendment would be futile because it already admitted that it left the Project worksite twice due to a dispute with Plaintiff regarding payment for additional work. (*See generally* Dkt. No. 17 [Counter-Defs.' Reply Mem. of Law].)

## II.  LEGAL STANDARD GOVERNING MOTIONS FOR JUDGMENT ON THE PLEADINGS

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases). It has long been understood

that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211 nn.15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[3]

---

[3] *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a

11

plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[4]

---

[4] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

## III. ANALYSIS

### A. Whether Counter-Claimant's Breach-of-Contract Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Counter-Defendants' memoranda of law. (Dkt. No. 13, Attach. 5 [Counter-Defs.' Mem. of Law]; Dkt. No. 17 [Counter-Defs.' Reply Mem. of Law].) To those reasons, the Court would only add two points.

First, the Court agrees with Counter-Defendants' argument that Counter-Claimant materially breached the Subcontract when it abandoned the Project worksite on each of two occasions. (Dkt. No. 13, Attach. 5, at 6-11; Dkt. No. 17, at 4-7.) The Subcontract is clear that Counter-Claimant "shall diligently proceed with all Subcontract Work, including any changed or disputed work directed in writing, notwithstanding that an outstanding change order request, claim, or protest with respect to such Work is pending or unresolved or [Plaintiff] has withheld payment in good faith." (Dkt. No. 5, Attach. 3, at ¶ 33.) *See also Kalisch-Jarcho, Inc. v. City of New York*, 72 N.Y.2d 727, 731 (N.Y. 1988) (upholding a contract provision that required the subcontractor to continue working during a dispute related to extra work that was arguably outside of the contract so long as that extra work was not "so frivolous, so palpably and manifestly outside the contract, that there could not even be a reasonable doubt that the [sub]contractor would prevail in a breach of contract action if it refused to comply" with the contractor's directive); *Mometal Structures, Inc. v. T.A. Ahern Contractors Corp.*, 09-CV-2791, 2013 WL 764717, at *6 (E.D.N.Y. Feb. 28, 2013) (holding Mometal liable for breach of contract where Mometal believed that the work at issue was "extra work" outside the scope of the contract so it conditioned its future performance on Ahern's acceptance of additional terms not

contained in the contract, Ahern refused and sent a letter terminating the contract, and Mometal ceased performing under the contract in response to Ahern's termination letter).

Much like the plaintiff in *Mometal*, Counter-Claimant alleges that it notified Plaintiff that it would not return to the Project or continue work unless Plaintiff agreed to pay for "additional work." (Dkt. No. 5, at ¶¶ 80-82.) *See also Mometal Structures, Inc.*, 2013 WL 764717, at *6-8. When Plaintiff refused to agree to the terms proposed by Counter-Claimant, Counter-Claimant abandoned the Project. (Dkt. No. 5, at ¶ 83.) Furthermore, the parties agree that Counter-Claimant left the Project for a second time because Plaintiff refused to pay for "additional work performed by [Counter-Claimant]." (*Id.* at ¶ 82.) To the extent that Counter-Claimant believed that Plaintiff "was trying to obtain additional work and services (perhaps extracontractual work and services), without agreeing to provide any additional compensation," it was required by the Subcontract to submit written notice of the asserted change or claim, complete its obligations, and, if unable to come to an agreement on the extra work, bring a cause of action of breach of contract. (Dkt. No. 5, Attach. 3, at ¶¶ 32-33.) What Counter-Claimant was not permitted to do was demand additional payment for the "extra work" and cease working on the Project when Plaintiff refused to pay. (*Id.*)

In addition, the Court finds that Paragraph 33 is not void under N.Y. Gen. Bus. Law § 757 for the reasons stated in Counter-Defendants' memorandum of law. (Dkt. No. 17, at 7-8.) Pursuant to N.Y. Gen. Bus. Law § 757(2), a contract provision "stating that a party to the contract cannot suspend performance under the contract if another party to the contract fails to make prompt payments under the contract" is void. N.Y. Gen. Bus. Law § 757(2). However, Paragraph 33 relates to continued work despite disputes over changed or disputed work. (Dkt.

15

No. 5, Attach. 3, at ¶ 33.) There is no allegation that Plaintiff failed to promptly pay Counter-Claimant for already completed work prior to Counter-Claimant's abandonment of the Project worksite on August 15, 2018. (*See generally* Dkt. No. 5.) In fact, Counter-Claimant alleges that Plaintiff had issued a check in the amount of $1,176,110.41 for work performed during July 2018 and it was not until Counter-Claimant abandoned the Project worksite on August 15, 2018, that Plaintiff stopped payment on this check. (*Id.* at ¶ 78.)

Second, in the alternative, the Court agrees with Counter-Defendants' argument that Counter-Claimant's breach-of-contract claim must be dismissed because that claim fails to allege, even generally, that Counter-Claimant complied with the Subcontract's conditions precedent prior to asserting its breach-of-contract claim. (Dkt. No. 13, Attach. 5, at 11-13; Dkt. No. 17, at 2-4.) While "the substantive merits of any contract claims are governed by New York law, any pleading requirements are governed by federal law which controls procedural matters in diversity cases." *Mendez v. Bank of Am. Home Loans Servicing, LP,* 840 F. Supp. 2d 639, 647 (E.D.N.Y. 2012) (citing 2 Moore's Federal Practice § 9.03[1][e] [3d ed. 2003]). Rule 9(c) of the Federal Rules of Civil Procedure provides, "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." The Court interprets Rule 9(c) of the Federal Rules of Civil Procedure as requiring that Counter-Claimant must plead fulfillment of the conditions precedent, but may do so with generality that tracks the language of Fed. R. Civ. P. 9(c). Fed. R. Civ. P. 9(c); *see also Patel v. Baluchi's Indian Rest.*, 08-CV-9985, 2009 U.S. Dist. LEXIS 66512, at *21 (S.D.N.Y. July 30, 2009) (dismissing the plaintiffs' breach of contract claim because the plaintiffs failed to allege satisfaction of the condition precedent); *Baraliu v. Vinya Capital, L.P.,* 07-CV-4626, 2009 WL 959578, at *5

(S.D.N.Y. Mar. 31, 2009) ("Under the Federal Rules, a plaintiff is required to 'allege generally that all conditions precedent have occurred or been performed.' Plaintiff fails to do so . . . hence this claim must be dismissed."); *CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.,* 03-CV-7936, 2006 WL 1379596, at *4 (S.D.N.Y. May 18, 2006) (holding that the plaintiff failed to state a claim for breach of contract where plaintiff "failed to allege, even generally, that the conditions precedent were performed or had occurred"); *Udell v. Berkshire Life Ins. Co. of Am.,* 03-CV-2721, 2005 WL 1243497, at *5 (E.D.N.Y. May 25, 2005) (dismissing a breach of contract claim where the plaintiff did "not even generally allege performance of his . . . remaining obligations under the" contract); *YWCA v. All State Ins. Co. of Canada*, 158 F.R.D. 6, 8 (D.D.C. 1994) ("Since an insurer's duty under the policy of insurance does not arise until the conditions precedent have occurred or been performed, it is incumbent on a plaintiff seeking recovery under the insurance policy to allege that all the conditions precedent to recovery have been fulfilled."); *see also Jeda Capital-56 LLC v. Lowe's Home Ctrs., Inc.*, 12-CV-0419, 2013 WL 5464647, at *5 (N.D.N.Y. Sept. 30, 2013) (Kahn, J.) (quoting *Mendez v. Bank of Am. Home Loans Servicing, LP,* 840 F. Supp. 2d 639, 648 [E.D.N.Y. 2012]) ("Courts in the Second Circuit have been inconsistent as to whether Rule 9(c) requires plaintiffs to affirmatively plead performance of conditions precedent, but even where courts do require such allegations in the complaint, they have 'consistently accepted only generally averments of their fulfillment.'").

Moreover, the Court finds that Counter-Defendants alleged with particularity that Counter-Claimant did not comply with the conditions precedent set forth in Paragraph 32. (Dkt. No. 10, at ¶ 67.)

Finally, Counter-Claimant's counterclaim does not allege facts plausibly suggesting that Plaintiff waived the notice requirements pursuant to Paragraph 32. (*See generally* Dkt. No. 5.)

For each of these alternative reasons, Counter-Claimant's breach-of-contract claim is dismissed.

       **B.**     **Whether Counter-Claimant's Two Quasi-Contract Claims Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Counter-Defendants' memoranda of law. (Dkt. No. 13, Attach. 5 [Counter-Defs.' Mem. of Law]; Dkt. No. 17 [Counter-Defs.' Reply Mem. of Law].) To those reasons, the Court would only add one point.

"Under New York law, 'quasi-contractual [such as *quantum meruit* and unjust enrichment] . . . relief is unavailable where [as here] an express contract covers the subject matter.'" *Karmilowicz v. Hartford Fin. Servs. Grp.*, 494 F. App'x 153, 157 (2d Cir. 2012) (quoting *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 [2d Cir. 1988]; *accord Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 [2d Cir. 2009] ["[I]t is an elementary principle of contract law that, where there exists an express contract for compensation, an action outside the contract will not lie."]; *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 60 [2d Cir. 1997] ["[U]njust enrichment [and] *quantum meruit* . . . . are non-contractual, equitable remedies that are inapplicable if there is an enforceable contract governing the subject matter."]; *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 392, 388 [N.Y. 1987] ["A 'quasi contract' only applies in the absence of an express agreement . . . ."]; *see also SAA-A, Inc. v. Morgan Stanley Dean Witter & Co.*, 281 A.D.2d 201, 2013 [N.Y. App. Div. 1st Dep't 2001] ["[W]here there is an express contract no recovery can be had on a theory of implied contract."];

*MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*, 87 A.D.3d 836, 842 [N.Y. App. Div. 1st Dep't 2011] [rejecting promissory estoppel claim because "a breach of contract claim may not give rise to tort liability unless a legal duty independent of the contract–i.e., one arising out of circumstances extraneous to, and not constituting elements of the contract itself–has been violated."]).

Here, it is undisputed that the Subcontract exits, is a valid contract, and has provisions in place for "extra work." (Dkt. No. 5, Attach. 3, at ¶ 32.) Unlike the circumstances in *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, which involved a contract that was primarily oral with some written terms and conditions, and an allegation that the plaintiff rendered services outside of the parties' agreement, there is no issue of fact that the Subcontract here contemplated extra work. *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 58 A.D.3d 6, 11, 20 (N.Y. App. Div. 2d Dep't 2008).

For all of these reasons, Counter-Claimant's unjust enrichment and *quantum meriut* claims are dismissed.

### C. Whether Counter-Claimant's Claim Against Counter-Defendant Liberty Mutual Insurance Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Counter-Defendants' memoranda of law. (Dkt. No. 13, Attach. 5 [Counter-Defs.' Mem. of Law]; Dkt. No. 17 [Counter-Defs.' Reply Mem. of Law].) To those reasons, the Court would only add one point.

"A payment bond 'guarantees the owner that all bills for labor and materials contracted for and used by the contractor will be paid by the surety if the contractor defaults.'" *Travelers Cas. and Sur. Co. v. Dormitory Auth.–State of New York*, 735 F. Supp. 2d 42, 52 n.5 (S.D.N.Y.

2010) (quoting 11 N.Y. Jur. 2d Bonds § 61; and citing *Area Masonry, Ltd. v. Dormitory Auth.*, 64 A.D.2d 810, 810-11 [N.Y. App. Div. 4th Dep't 1978]). Under New York law, the liability of the surety is limited to the liability of the contractor. *Venus Mech. Inc. v. Ins. Co. of N. America*, 245 A.D.2d 559, 559 (N.Y. App. Div. 2d Dep't 1997) (holding that the liability of the surety was measured by the liability of the principal).

As set forth above in Parts III.A. and III.B. of this Decision and Order, the Court finds that Counter-Claimant's claims against Plaintiff are dismissed. Therefore, Counter-Claimant's claim against Counter-Defendant Liberty Mutual Insurance, as surety on the Project, is also dismissed.

### D. Whether Counter-Claimant's Request for Leave to Re-Plead Should Be Denied

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Counter-Defendants' memoranda of law. (D kt. No. 13, Attach. 5 [Counter-Defs.' Mem. of Law]; Dkt. No. 17 [Counter-Defs.' Reply Mem. of Law].)

For all of these reasons, Counter-Claimant's claims against Counter-Defendants are dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Counter-Defendants' motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that the Counter-Claimant's counterclaims are **DISMISSED**.

Dated: July 1, 2019
      Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge