UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LeCHASE CONSTR. SERVS., LLC,

        Plaintiff,

v.

ESCOBAR CONSTR., INC.,

        Defendant,

ESCOBAR CONSTR., INC.,                3:18-CV-1021
                                                   (GTS/ML)

        Counter-Claimant,

LeCHASE CONSTR. SERVS., LLC;
and LIBERTY MUT. INS. CO.,

        Counter-Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| ERNSTROM & DRESTE, LLP<br>  Counsel for Plaintiff/Counter-Defendants<br>925 Clinton Square<br>Rochester, New York 14604 | JOHN W. DRESTE, ESQ.<br>MATTHEW D. HOLMES, ESQ. |
| REEVE BROWN PLLC<br>  Co-Counsel for Defendant/Counter-Claimant<br>3380 Monroe Avenue, Suite 200<br>Rochester, New York 14618 | CHARLES A. REEVE, ESQ. |
| ALARIO & FISCHER, P.C.<br>  Co-Counsel for Defendant/Counter-Claimant<br>5 Adler Drive, Suite 4<br>East Syracuse, New York 13507 | DONALD C. FISCHER, ESQ. |

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this breach-of-contract action filed by LeChase Construction Services, LLC ("Plaintiff") against Escobar Construction, Inc. ("Counter-Claimant"), are (1) Counter-Claimant's motion for reconsideration of the Court's Decision and Order of July 1, 2019, and for leave to amend its Answer with Counterclaims, and (2) Counter-Claimant's counsels' motions to withdraw as counsel. (Dkt. Nos. 27, 41, 42.) For the reasons set forth below, Counter-Claimant's motion for reconsideration and for leave to amend is denied, and Counter-Claimant's counsels' motions to withdraw are granted.

## I. RELEVANT BACKGROUND

### A. Procedural History

Because this Decision and Order is intended primarily for the review of the parties, the Court will not recite in detail this action's procedural history, except to note the following events: (1) on August 24, 2018, Plaintiff filed the original Complaint in this action (Dkt. No. 1); (2) on October 29, 2018, Counter-Claimant filed an Answer to the Complaint and Counter-Claim against Plaintiff and Liberty Mutual Insurance Company (collectively "Counter-Defendants") (Dkt. No. 5); (3) on November 19, 2018, Counter-Defendants filed an Answer to the Counter-Claim (Dkt. No. 10); (4) on December 10, 2018, Counter-Defendants filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or, in the alternative, a motion to dismiss Counter-Claimant's counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 13, Attach. 5); (5) on July 1, 2019, the Court granted Counter-Defendants' motion for judgment on the pleadings (Dkt. No. 25 [Decision and Order filed July 1, 2019]); (6) on July 15, 2019, Counter-Claimant filed motion for leave to amend and for reconsideration (Dkt. No. 27);

(7) on November 8, 2019, Counter-Claimant's counsel Donald Fischer filed a motion to withdraw as counsel (Dkt. No. 41); and (8) on November 12, 2019, Counter-Claimant's counsel Charles Reeve filed a motion to withdraw as counsel (Dkt. No. 42).

> B. **Parties' Briefing on Counter-Claimant's Motion for Leave to Amend and for Reconsideration**
>
>> 1. **Counter-Claimant's Memorandum of Law-in-Chief**

Generally, in its motion for leave to amend and for reconsideration, Counter-Claimant asserts four arguments. First, Counter-Claimant argues that the Court should excuse Counter-Claimant's suspensions of work because Plaintiff allegedly breached the Subcontract before Counter-Claimant suspended its work. (Dkt. No. 27, at 9 [Counter-Claimant's Mem. of Law].) Counter-Claimant argues that Plaintiff breached the Subcontract by (1) hindering or delaying Counter-Claimant's performance of the Subcontract in that it failed to provide the worksite in suitable condition, thus requiring Counter-Claimant to complete additional work, which significantly increased the total cost of the project, and (2) breaching the covenant of good faith and fair dealing in that it (a) failed to provide the worksite in suitable condition, (b) scheduled the on-site work in an unreasonable sequence, and (c) arbitrarily responded to Counter-Claimant's change order submissions. (*Id*. at 10.)

Second, Counter-Claimant argues that Section 33 of the Subcontract does not prohibit Counter-Claimant from suspending its work when (1) Plaintiff did not request the additional work *in writing*, and (2) Plaintiff did not perform its obligations in good faith and fair dealing. (*Id*.) Counter-Claimant alleges that Plaintiff requested "[m]uch of [the] additional work" through

"verbal directives," and that Plaintiff did not perform its obligations in good faith and fair dealing for the aforementioned reasons. (*Id*.)

Third, Counter-Claimant argues that its first suspension of work did not qualify as a default because, under Section 31(A) of the Subcontract, Plaintiff must notify Counter-Claimant of Counter-Claimant's deficiency under the Subcontract and provide Counter-Claimant with an opportunity to cure the deficiency, but Plaintiff did not provide Counter-Claimant with notice to cure, and Counter-Claimant cured any deficiency by resuming work within two days. (*Id.* at 12.)

Fourth, Counter-Claimant argues that Plaintiff breached the Subcontract by failing to pay Counter-Claimant the money Plaintiff owed it based on the original Subcontract. (*Id*.) Counter-Claimant argues that it primarily suspended its work due to that breach, not Plaintiff's failure to pay for *additional* work, and that this Court made an error by finding that Counter-Claimant suspended its work for the second time "solely" based on Plaintiff's refusal to pay for *additional* work. (*Id*. at 12-13.)

### 2. Counter-Defendants' Opposition Memorandum of Law

Generally, in Counter-Defendants' memorandum of law, Counter-Defendants assert three arguments. (Dkt. No. 32, at 2 [Counter-Defendants' Mem. of Law].) First, Counter-Defendants allege that Counter-Claimant has not satisfied the standard for reconsideration. (*Id*. at 3.) More specifically, Counter-Defendants argue that Counter-Claimant's motion for reconsideration does not indicate an intervening change in controlling law, any new evidence that was not previously available, or any reason to believe this Court must reconsider this case to remedy a clear error of law or to prevent manifest injustice. (*Id*. at 3, 7-9.)

Second, Counter-Defendants argue that Counter-Claimant's failure to meet the standard for reconsideration bars its ability to amend its claims. (*Id*. at 10.) More specifically, Counter-Defendants argue that, although a court may consider a motions for leave to amend in conjunction with a motion for reconsideration, the movant must still meet the standard for reconsideration under Fed. R. Civ. P. 59(e) or 60(b), and the court may not grant relief solely on the basis of a motion to amend. (*Id*. at 5.)

Third, Counter-Defendants argue that Counter-Claimant's proposed amendments are futile. (*Id*. at 10.) More specifically, Counter-Defendants argue that, pursuant to Section 33 of the Subcontract, Counter-Claimant had an obligation to continue to perform work under the Subcontract, even if Counter-Claimant had a valid complaint regarding Counter-Defendants' lack of payment, as well as an obligation to provide Counter-Defendants with seven-to-ten days' written notice before suspending work due to lack of payment. (*Id*. at 10-12.) Counter-Defendants also argue that Counter-Claimant's proposed amendments related to a mechanic-lien are not valid. (*Id*. at 13-14.)

## II. LEGAL STANDARDS GOVERNING THE MOTIONS

A court may "take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011). However, "a party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Rules 59(e) or 60(b)." *Williams*, 659 F.3d at 213.

A court may justifiably reconsider its previous ruling under three circumstances: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes

to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 [2d Cir. 1983]). The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.[1] Thus, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

## III. ANALYSIS

### A. Motion for Reconsideration and for Leave to Amend

Because "the thrust of each of the arguments asserted in [Counter-Claimant's] memorandum of law . . . regards the 'prevention of manifest injustice,'" the Court shall evaluate Counter-Claimant's motion for reconsideration and for leave to amend by primarily focusing on the third prong of the standard of reconsideration. *Cont'l Ins. Co. v. Coyne Int'l Enter. Corp.*, 700 F. Supp. 2d 207, 216 (N.D.N.Y. 2010) (Suddaby, J.). The Court finds no intervening change of controlling law and finds that the evidence introduced in support of Counter-Claimant's motion was available when Counter-Claimant opposed Counter-Defendants' original motion. (*Compare* Dkt. No. 27, Attachs. 4-8 *with* Dkt. No. 5, Attachs. 1-3; Dkt. No. 16; Dkt. No. 25, at

---

[1] Generally, motions for reconsideration are not granted unless "the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

4-6.)  Thus, the only remaining question is whether there is a clear error of law or manifest injustice.  After carefully considering the matter, the Court determines that there is no clear error of law or manifest injustice with regard to the Court's Decision and Order of July 1, 2019.  (Dkt. No. 25 [Decision and Order filed July 1, 2019].)

Regarding Counter-Claimant's first argument (i.e., that Plaintiff breached the Subcontract before Counter-Claimant suspended its work), the Court found that, although Counter-Claimant believed that Plaintiff had not held up its end of the bargain by demanding extra work, it breached the Subcontract itself when it abandoned the Project worksite on two occasions because the Subcontract required Counter-Claimant to (a) submit written notice of its claim regarding the extra work, (b) complete its obligations, and (c) if an agreement as to the perceived extra work could not be reached, file a breach-of-contract action.  (Dkt. No. 25, at 14-15 [Decision and Order filed July 1, 2019].)  The Court was aware of the delays in work and the condition of the worksite when making that initial determination, and already rejected the arguments Counter-Claimant now makes based on the provisions of the Subcontract.  (*Id*. at 4, 14-17.)  Counter-Claimant has not presented any reason why this finding should be reconsidered.  *See United States v. Sanchez*, 35 F.3d 673, 677 (2d Cir. 1994) (finding that the court's explicit rulings left no room for reconsideration); *Tanner v. Humphries*, 16-CV-1131, 2019 WL 974821, at *2 (N.D.N.Y. Oct. 30, 2015) (Suddaby, C.J.) ("[A] motion for reconsideration is not to be used for presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.") (quotations omitted).

Regarding Counter-Claimant's second argument (i.e., that Section 33 of the Subcontract does not prohibit Counter-Claimant from suspending its work because [1] Plaintiff did not

request the additional work *in writing* and [2] Plaintiff did not perform its obligations in good faith and fair dealing), the Court finds no clear error of law in the Court's original decision. (Dkt. No. 27, at 9 [Counter-Claimant's Memo. of Law]; Dkt. No. 25, at 14 [Decision and Order].) The Court notes that Counter-Claimant raised this same argument in its opposition to the motion for judgment on the pleadings, and that the Court rejected that argument in its Decision and Order. (Dkt. No. 16, at 9; Dkt. No. 25 [Decision and Order filed July 1, 2019].) Plaintiff has not provided any further sufficient rationale showing that the Court's finding was a clear error of law.

Additionally, although Counter-Claimant highlights that requests for additional work must be in writing pursuant to Section 33 of the Subcontract, it admits that at least a portion of the work it was performing was based on the original Subcontract terms. (Dkt. No. 27, at 9 [Counter-Claimant's Mem. of Law].) Therefore, the manner in which Plaintiff ordered additional work is inconsequential, given that Plaintiff's suspension also affected work that the original Subcontract obligated it to complete; in other words, Plaintiff's abandonment of the Project worksite meant that he stopped work not only on the extra disputed work, but also on the work actually covered by the Subcontract that it was obligated to perform. Simply put, the fact that Counter-Claimant had a dispute with Plaintiff over extra work in no way impacted Counter-Claimant's obligation to perform the work covered by the Subcontract, whether or not Plaintiff provided written requests for additional work. Counter-Claimant's argument that he was entitled to stop *all* work merely because the additional work had allegedly not been requested in writing is not supported by the plain language of the Subcontract. (Dkt. No. 27, Attach. 6, at 10 [Subcontract] ["Subcontractor shall diligently proceed with all Subcontract Work, including any

changed or disputed work directed in writing . . . ."].) As to Counter-Claimant's argument that Section 33 should not apply because Plaintiff did not perform its obligations in good faith and fair dealing, this Court finds no evidence in the record to support reconsideration of this issue. (*See generally* Dkt. No. 27, Attachs. 4-8.)

Regarding Counter-Claimant's third argument (i.e., that its first suspension of work did not qualify as a default), the Court has already determined that Plaintiff breached the Subcontract by suspending its work on both occasions, and Counter-Claimant has provided no reason for the Court to reconsider that finding. (*Compare* Dkt. No. 27, at 9 [Counter-Claimant's Mem. of Law] *with* Dkt. No. 25, at 5-6, 14-15 [Decision and Order filed July 1, 2019].) *See also United States v. Ketcham*, 11-CR-0057, 2015 WL 12670883, at *4 (N.D.N.Y. Oct. 30, 2015) (Suddaby, C.J.) (finding that a movant's failure to produce any overlooked facts that would entitle him to relief was an impermissible attempt to relitigate his claims).

Regarding Counter-Claimant's fourth argument (i.e., that Plaintiff breached the Subcontract by failing to pay Counter-Claimant the money Plaintiff owed based on the original Subcontract), Counter-Claimant may not relitigate issues presented to, and decided by, the Court. (*Compare* Dkt. No. 27 at 9 [Counter-Claimant's Mem. of Law] *with* Dkt. No. 25, at 15 [Decision and Order filed July 1, 2019].) The Court clearly determined that "[t]here [was] no allegation that Plaintiff failed to promptly pay Counter-Claimant for already completed work prior to Counter-Claimant's abandonment of the Project worksite on August 15, 2018" in the operative pleading. (Dkt. No. 25, at 15-16 [Decision and Order filed July 1, 2019].) It is only in Counter-Claimant's new proposed amended counterclaim submitted as part of the current motion for reconsideration that it purports to allege (without providing any new evidence) that Plaintiff

failed to pay for approved work under the Subcontract before Counter-Claimant's abandonment of the Project worksite; such last-ditch attempts by Counter-Claimant to cure its pleading deficiencies do not provide a basis for reconsideration. (Dkt. No. 27, Attach. 9, at 14-15 [Counter-Claimant's Mem. of Law].)

For the reasons stated above, the Court denies Counter-Claimant's motion for reconsideration, and, as a result, also denies its leave to amend its Answer and Counter-Claims.

### B.     Motion to Withdraw as Counsel

After carefully considering the matter, the Court finds that both motions to withdraw as counsel are supported by a showing of cause, whether they are considered under the lightened standard governing an unopposed motion or the more-rigorous standard governing an opposed motion. *Farmer v. Hyde Your Eyes Optical, Inc.*, 60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014); *see also Naguib v. Pub. Health Solutions*, 12-CV-2561, 2014 WL 2002824, at *1 (E.D.N.Y. 2014) ("Satisfactory reasons for withdrawal include 'a client's lack of cooperation, including lack of communication with counsel, and the existence of irreconcilable conflict between attorney and client.'"). As a result, the Court grants these motions to withdraw.

**ACCORDINGLY**, it is

**ORDERED** that Counter-Claimant's motion for reconsideration of the Court's Decision and Order of July 1, 2019, and for leave to amend (Dkt. No. 27) is **DENIED**; and it is further

**ORDERED** that Counter-Claimant's counsels' motions to withdraw as counsel (Dkt. Nos. 41, 42) are **GRANTED**.

Dated: December 16, 2019
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge