UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LeCHASE CONSTRUCTION SERVICES, LLC,

                        Plaintiff,

v.                                                 3:18-CV-1021
                                               (GTS/ML)

ESCOBAR CONSTRUCTION, INC.,

                        Defendant.
_____

APPEARANCES:                                OF COUNSEL:

ERNSTROM & DRESTE, LLP              JOHN W. DRESTE, ESQ.
  Counsel for Plaintiff                    MATTHEW D. HOLMES, ESQ.
925 Clinton Square
Rochester, NY 14604

WASSERMAN GRUBIN & ROGERS LLP     ANDREW K. LIPETZ, ESQ.
  Counsel for Defendant
1700 Broadway, 16th Floor
New York, NY 10019

GLENN T. SUDDABY, Chief United States District Judge

<h2 style="text-align:center">DECISION and ORDER</h2>

      Currently before the Court, in this breach-of-contract action filed by Le Chase Construction Services, Inc. ("Plaintiff") against Escobar Construction, Inc. ("Defendant"), is Plaintiff's motion for damages and attorneys' fees. (Dkt. No. 68.) For the reasons set forth below, Plaintiff's motion is granted.

# I.     RELEVANT BACKGROUND

## A.     Procedural History

      On August 24, 2018, Plaintiff filed its Complaint, asserting a claim of breach of contract. (Dkt. No. 1.) On July 1, 2019, the Court granted Plaintiff's motion for judgment on the pleadings and

dismissed Defendant's counterclaims.  (Dkt. No. 25 [Decision and Order filed July 1, 2019].)  On

December 16, 2019, the Court denied a motion to reconsider the Decision and Order of July 1, 2019.

(Dkt. No. 45.)  On February 10, 2020, Plaintiff filed a motion for default judgment, which the Court

granted on September 28, 2020.  (Dkt. Nos. 55, 66.)  On September 28, 2020, the Court entered default

judgment against Defendant and ordered Plaintiff to submit evidence related to the amount of damages

incurred as a result of Defendant's breach of contract within 21 days of the Court's Decision and Order.

(Dkt. No. 67.)

       **B.**      **Plaintiff's Motion for Damages and Attorneys' Fees**

On October 19, 2020, Plaintiff filed a memorandum of law and supporting evidence, seeking

damages in the amount of (a) $3,204,960.73 plus interest from August 16, 2018, onward related to the

breach-of-contract claim, and (b) $83,059.00 in attorneys' fees.  (Dkt. No. 68 [Pl.'s Mem. of Law].)

As of the date of this Decision and Order, Defendant has not filed any response or opposition to

Plaintiff's request for damages and attorneys' fees.  (*See generally* Docket Sheet.)

**II.**      **GOVERNING LEGAL STANDARDS**

       **A.  Legal Standards Governing Breach-of-Contract Claims**

"Under New York law, breach of contract damages may fall into any one of three categories:

expectation, reliance, and restitution," but, "[r]egardless of the damages sought, the plaintiff bears the

burden of proof of establishing that 'any claimed damages were caused by defendant's breach to a

reasonable degree of certainty.'"  *In re Residential Capital, LLC*, 533 B.R. 379, 407 (S.D.N.Y. 2015)

(quoting *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 424-25 [S.D.N.Y. 2004]).  "[T]he

normal measures of damages for breach of contract is expectation damages," which represents "'the

amount necessary to put plaintiff in as good a position as if defendant had fulfilled the contract.'"  *In re*

*Residential Capital, LLC*, 533 B.R. at 407 (quoting *Wechsler*, 330 F. Supp. 2d at 425); *Comprehensive*

*Mfg. Assocs., LLC v. SupplyCore Inc.*, 15-CV-0835, 2018 WL 2947869, at *1 (N.D.N.Y. June 12, 2018) (McAvoy, J.) (stating that expectation damages are "the amount necessary to put the aggrieved party in as good a position as it would have been had the contract been fully performed").

### B.  Legal Standards Governing Motions for Attorneys' Fees

Traditionally, courts have determined a "reasonable attorney's fee" by calculating the lodestar– the product of the number of hours required by the matter and a reasonable hourly rate.  *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 [2010]; *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 [2d Cir. 2008]).  A reasonable hourly rate is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  *Bergerson*, 652 F.3d at 289-290 (internal quotation marks omitted).  The court must refer to "the prevailing [market rates] in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 [1984]).  A determination of the reasonable hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel[, which] may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko*, 433 F.3d at 209.

The reasonable amount of time spent on a matter depends in part on the degree of difficulty of the factual and legal issues involved.  *Hofler v. Family of Woodstock, Inc.*, 07-CV-1055, 2012 WL 527668, at *5 (N.D.N.Y. Feb. 17, 2012) (McAvoy, J.).  Courts may reduce from the lodestar calculation hours that are "excessive, redundant, or otherwise unnecessary" and consequently are not reasonable. *Hofler*, 2012 WL 527668, at *5 (citing *Hensley*, 461 U.S. at 434).  In considering the number of

reasonably expended hours, the court "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  *Hensley*, 461 U.S. at 434; *see also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 [2d Cir. 1983]).  The court should also consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

Finally, it is important to note that the fee applicant bears the burden of documenting the hours reasonably expended and the reasonable hourly rates.  *Hensley*, 461 U.S. at 437.  To demonstrate that a fee request is reasonable, "a party seeking an attorney's fees award 'must support that request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done.'"  *Kingvision Pay-Per-View, Ltd. v. Castillo Rest. Corp.*, 06-CV-0617, 2007 WL 841804, at *6 (E.D.N.Y. Jan. 16, 2007) (quoting *Cablevision Sys. New York City Corp. v. Diaz*, 01-CV-4340, 2002 WL 31045855, at *5 [S.D.N.Y. July 10, 2002]).

## III.    ANALYSIS

### A.    Expectation Damages

As an initial matter, the Court notes that Plaintiff has stated that all of the expenses it requests as damages were suffered as a direct result of Defendant's breach of the Subcontract, and has provided documents that substantiate the nature of the contracts entered into with each subcontractor, the amounts paid for work and materials, and the dates on which those contracts and/or payments were made.  (Dkt. No. 71 [Frost Decl.].)  *See RCN Telecom Servs., Inc. v. 202 Centre Street Realty, LLC*, 156 F. App'x 349, 351 (2d Cir. 2005) ("Damages for breach of contract must be 'such only as actually follow or may follow from the breach of the contract.'").  Plaintiff's assertion is supported by the submitted evidence, and Defendant has not made any response in opposition to challenge the propriety of the asserted

damages.  The Court therefore finds that Plaintiff has sufficiently proven that the claimed damages are the result of Defendant's breach of the Subcontract.

As Plaintiff states in its memorandum of law, Sections 31(A), 31(B), and 37 of the Subcontract entitle it to damages resulting from Defendant's breach of the Subcontract.  (Dkt. No. 68, at 4 [Pl.'s Mem. of Law].)  As discussed above in Part II of this Decision and Order, these damages take the form of expectation damages, and are limited to the amount that would put Plaintiff in as good of a position as if Defendant had fulfilled the Subcontract.  The Court finds that the following amounts are supported by the evidence related to expenses Plaintiff incurred in hiring other contractors to complete work that was covered by the Subcontract with Defendant:

- $58,698.00 for CFI Sales & Services, Inc. (Dkt. No. 71, Attach. 7);

- $6,468.00 for Gerardi & DiBello Contracting, Inc. (Dkt. No. 71, Attach. 10);

- $360,000.00 for John H. Cook Jr. Painting Contractors, Inc. (Dkt. No. 71, Attach.13, at 32; Dkt. No. 71, Attach. 14);

- $519,440.00 for KSP Painting of Syracuse, Ltd. (Dkt. No. 71, Attach. 17);

- $1,042,107.73 for Rochester Davis-Fetch Corp. (Dkt. No. 71, Attach. 20);

- $876,232.50 for Ron Wright, Inc. (Dkt. No. 72, Attach. 2);

- $269,346.53 for Ostrowsky Builders, LLC (Dkt. No. 72, Attach. 5);

- $796,691.00 for S. Centolella Painting, Inc. (Dkt. No. 72, Attach. 6, at 2; Dkt. No. 72, Attach. 8);

- $224,270.40 for Accurate Acoustical, Inc. (Dkt. No. 72, Attach. 9, at 2-3; Dkt. No. 72, Attach. 11);

- $435,588.03 for Gypsum by McCarthy, Inc.[1] (Dkt. No. 73, Attach. 1);

- $178,700.00 for Statewide Construction, Inc. (Dkt. No. 73, Attach. 4);

- $525,050.00 for SP Builders Contractors, Inc. (Dkt. No. 73, Attach. 7); and

- $223,808.00 for E & M Paint Contracting, Inc. (Dkt. No. 73, Attach. 10).

Additionally, the following amounts are supported by the evidence related to claims that were assigned to Plaintiff from contractors for payments that were owed to those contractors by Defendant:

- $224,436.17 for Core Building Materials of Broome (Dkt. No. 74, Attach. 2);

- $53,954.24 for Gypsum by McCarthy, Inc. (Dkt. No. 73, Attach. 13);

- $8,500.00 for Gypsum by Wholesalers, Inc. (Dkt. No. 73, Attach. 16);

- $205,000.00 for L & W Supply Construction (Dkt. No. 74, Attach. 5); and

- $116,250.00 for PPG Architectural Finishes, Inc. (Dkt. No. 74, Attach. 8).

Lastly, the evidence supports $253,718.49 in expenses that Plaintiff itself incurred in hiring additional union workers and acquiring equipment to complete work that Defendant was required to do under the Subcontract. (Dkt. No. 73, Attach. 11.) Thus, the Court finds that the evidence supports that Plaintiff was required to expend at total of $6,378,259.49 to complete the work that Defendant was required to do by the Subcontract.[2]

---

[1]    The Court notes that Plaintiff has asserted that it incurred $478,088.03 in expenses for Gypsum by McCarthy, Inc. (Dkt. No. 71, at ¶¶ 50-53 [Frost Decl.].) However, the evidence relied on by Plaintiff for that total amount includes the $42,500 that Plaintiff paid to Gypsum by McCarthy, Inc., to have that contractor's claim against Defendant for non-payment assigned to it. (Dkt. No. 72, Attach. 1.) Because the Court is considering the amounts owed to Plaintiff as a result of assignments in a separate portion of this Decision and Order, the Court has subtracted $42,500 from the total expenses related to the materials that Gypsum by McCarthy, Inc., provided to allow Plaintiff to complete the Subcontract work after Defendant's breach, separate and apart from the expenses that Defendant owed it.

[2]    The Court notes that its concluded amounts differ in some respect from the amounts asserted in the Frost Declaration. (Dkt. No. 71, at ¶ 11 [Frost Decl.].) However, the Court also notes that the amounts Plaintiff asserts throughout its memorandum of law and the Frost

The evidence also establishes that the total value of the Subcontract was $7,012,419.79 after all approved Change Orders, and that Plaintiff had already paid Defendant $3,895,711.33 for work completed.  (Dkt. No. 74, Attach. 10, at 2; Dkt. No. 74, Attach. 12.)  Thus, Plaintiff would have still expected to pay the remaining $3,116,708.46 had Defendant completed the work according to the terms of the Subcontract.  As a result, the damages discussed above must be decreased by the amount that Plaintiff would have otherwise paid had the Subcontract been fully and perfectly performed.  The Court therefore finds that the amount of expectation damages proven and recoverable by Plaintiff is $3,261,550.63.

### B.  Attorneys' Fees

As a general rule, a plaintiff who prevails on a breach of contract claim is not entitled to attorneys' fees.  *Alyeska Pipeline Servs. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991).  However, reasonable attorneys' fees may be recovered if a contract provision provides for attorneys' fees in a given situation.  *Gulf Coast Bank and Tr. Co. v. ASESD, LLC*, 11-CV-5023, 2014 WL 6850970, at *5 (S.D.N.Y. Aug. 29, 2014) (citing *U.S. Fid. Guar. Co. V. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74-75 [2d Cir. 2004]; *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250 [2d Cir. 1987]), report-recommendation adopted by 2014 WL 6845410 (S.D.N.Y. Dec. 4, 2014); *Benson v. Quicknowledge, Inc.*, 08-CV-1215, 2010 WL 1930970, at *4 (N.D.N.Y. May 10, 2010) (Suddaby, J.).  Notably, where a contract provides for recovery of attorneys' fees, "the Court must still determine whether the amount requested is reasonable."

---

Affidavit are occasionally internally inconsistent with one another, and that the calculated totals are not mathematically consistent with the amounts listed for the individual contractors and expense categories.  Because it is not clear exactly how Plaintiff arrived at certain total amounts, the Court relies on its own calculations, which were arrived at through a thorough review of the evidence submitted and Plaintiff's representations about the work performed.

*PSG Poker, LLC v. DeRosa-Grund*, 06-CV-1104, 2008 WL 2755835, at *4 (S.D.N.Y. July 14, 2008)

(citing *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 2d 274, 277-78 [E.D.N.Y.

2008]), report-recommendation adopted by 2008 WL 3852051 (S.D.N.Y. Aug. 15, 2008).

      Here, the Subcontract provides for recovery of attorneys' fees.  Specifically, Section 31(A) states

that, in the event that Defendant neglects to prosecute or progress the contracted-for work diligently and

properly, fails to pay vendors or labor, fails to promptly correct defective or noncompliant work, or fails

to timely or properly perform requirements of the Subcontract, Defendant is responsible for all costs and

damages (including attorneys' fees) expended by Plaintiff to remedy the deficiency.  (Dkt. No. 71,

Attach. 3, at 10 [Subcontract].)  Section 31(B) states further that, should Defendant fail to cure any

default or abandon the work, Plaintiff may back-charge all resulting costs and damages, including

reasonable attorneys' fees, against the Subcontract amount.  (*Id.*)  Most clearly, Section 37 states that

"[Defendant] shall be liable for all loss, damage or expense, direct and indirect including reasonable

attorneys' fees and enforcement costs, which [Plaintiff] may suffer or incur by reason of any non-

performance or breach by [Defendant] of this Subcontract."  (*Id.* at 11.)   Thus, the Court agrees with

Plaintiff that the Subcontract allows for Plaintiff to recover attorneys' fees related to Defendant's breach

of the Subcontract in this case.

      Plaintiff requests the following in paralegal and attorneys' fees: (a) 55.5 hours for work

performed by Partner John W. Dreste at a rate of $295.00 per hour; (b) 11.6 hours for work performed

by Partner Todd R. Braggins at a rate of $275.00 per hour; (c) 5.3 hours for work performed by Partner

Kevin F. Peartree at a rate of $275.00 per hour; (d) 225.3 hours for work performed by Associate

Matthew D. Holmes at a rate of $195.00 per hour, and 81.8 hours for work performed by Associate

Holmes at a rate of $185.00 per hour; (e) 0.5 hours for work performed by Associate Brian M. Streicher

at a rate of $225.00 per hour; and (f) 22.6 hours for work performed by Paralegal Anne M. Canham at a rate of $100.00 per hour. (Dkt. No. 68, at 5; Dkt. No. 69, at 4.)

In assessing the requested fees, the Court finds that the amount of hours claimed does not appear to be excessive. Specifically, Plaintiff's counsel have been working on this matter since August 2018 and have prepared and pursued at least two motions in that time, as well as performed other work related to the litigation. Thus, the Court finds that the 402.6 hours claimed does not appear to be unreasonable under the circumstances.

However, some of the rates claimed by Plaintiff are in excess of what is ordinarily granted in this District. Recently, this Court has found that $300.00 per hour is reasonable for an attorney with between 20 and 30 years' experience, $250.00 per hour for attorneys with between 12 and 20 years' experience, and $150.00 per hour for more recently admitted attorneys. *Brooks v. Roberts*, 16-CV-1025, 2020 WL 6789291, at *5 (N.D.N.Y. Nov. 19, 2020) (Hurd, J.); *see also Car Freshner Corp. v. Scented Promotions, LLC*, 19-CV-1158, 2020 WL 5757475, at *10 (N.D.N.Y. Sept. 28, 2020) (Suddaby, C.J.) (noting that courts in this District have routinely found reasonable rates of $275.00-$350.00 for experienced partners and $165.00-$200.00 for junior associates). Additionally, the prevailing rate for paralegals in this District is $90.00 per hour. *Brooks*, 2020 WL 6789291, at *5; *Car Freshner Corp*, 2020 WL 5757475, at *8.

As to the attorneys, granted, Plaintiff has not provided any information about the relative experience of each attorney. However, the Court can take judicial notice of the law-school-graduation years of each of the attorneys in question from their law firm's website, as well as the bar-admission years of each of those attorneys from the New York State Unified Court System's website. *See, e.g., Farmer v. Hyde Your Eyes Optical, Inc.*, 13-CV-6653, 2015 WL 2250592, at *14, n.10 (S.D.N.Y. May 13, 2015); *Lee v. Grand Sichuan Eastern (N.Y.) Inc.,* 12-CV-8652, 2014 WL 199512, at *5 (S.D.N.Y.

9

Jan. 17, 2014).  Moreover, the rates requested for each are generally in line with what this Court has found to be reasonable relative to partners and associates.  However, the paralegal rate must be reduced from the requested $100.00 per hour to the well-established reasonable rate of $90.00 per hour.  As a result, the Court finds that Plaintiff is entitled to $82,833.00 in attorneys' fees.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion (Dkt. No. 68) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff is awarded expectation damages in the amount of **THREE MILLION, TWO HUNDRED AND SIXTY-ONE THOUSAND, FIVE HUNDRED FIFTY DOLLARS AND SIXTY-THREE CENTS ($3,261,550.63)** plus pre-judgment interest at the rate of 9% per annum[3] from August 16, 2018, to the date of this Decision and Order, and post-judgment interest on the amount of damages at the rate prescribed by 28 U.S.C. § 1961 from the date judgment is entered until the date the judgment is paid;[4] and it is further

**ORDERED** that Plaintiff is awarded attorneys' fees in the amount of **EIGHTY-TWO THOUSAND, EIGHT HUNDRED THIRTY-THREE DOLLARS ($82,833.00)**.

Dated: January 8, 2021
      Syracuse, NY

Glenn T. Suddaby
Chief U.S. District Judge

---

[3]    *See* N.Y. C.P.L.R. § 5004 (indicating that the rate of interest applicable to pre-judgment interest in breach-of-contract actions is 9% per annum).

[4]    The Court notes that the New York statutory rate applies to pre-judgment interest and the federal statutory rate applies to post-judgment interest in this case.  *See Schipani v. McLeod*, 541 F.3d 158, 164-65 (2d Cir. 2008) (noting that, "[i]n a diversity case, state law governs the award of prejudgment interest" but "post-judgment interest is governed by federal statute").